# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

| | | |
|---|---|---|
| **JONATHAN PHELPS, individually and on behalf of all others similarly situated** | : | **Case No: 6:22-cv-00106** |
| | : | |
| | : | **Judge Claria Horn Boom** |
| **Plaintiff,** | : | **Magistrate Hanly A. Ingram** |
| | : | |
| **v.** | : | **PLAINTIFF'S UNOPPOSED** |
| | : | **MOTION FOR PRELIMINARY** |
| **TOYOTETSU NORTH AMERICA,** | : | **APPROVAL OF CLASS ACTION** |
| | : | **SETTLEMENT** |
| **Defendant.** | : | |
| | : | **(Filed Electronically)** |
| | : | |

Plaintiff respectfully moves the Court for preliminary approval of class action settlement under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff's efforts have resulted in a proposed $400,000.00 non-reversionary common fund settlement on behalf of himself and the Class that was negotiated at arm's-length. As explained in the accompanying memorandum, this proposed settlement is fair, reasonable, adequate, and in the Class's best interest. A proposed order granting this Motion is attached as **Exhibit 1**. The Settlement Agreement and Release Agreement ("Settlement Agreement") is attached as **Exhibit 2**, which includes reference to the Notice that will be distributed to potential Class Members via regular U.S. mail (attached as **Exhibit 3**). Further attached are the proposed Claim Form (attached as **Exhibit 4**) and Long Form Notice (attached as **Exhibit 5**), which will be posted on the Settlement Website, www.toyotetsusdatasettlement.com. The affidavit of Terence R. Coates in Support of Preliminary Approval is attached as **Exhibit 6** ("Coates Affidavit") and the Declaration of Christopher Longley

on Adequacy of Notice Plan from Atticus Administration, LLC is attached as **Exhibit 7** ("Atticus Declaration"). Defendant has reviewed this filing and does not oppose this Motion.[1]

## **MEMORANDUM IN SUPPORT**

Plaintiff Jonathan Phelps and the proposed Class he represents have reached a nationwide class action settlement with Defendant Toyotetsu America, Inc. (named in the complaint as Toyotetsu North America) ("Defendant" or "Toyotetsu") for a $400,000 non-reversionary common fund to resolve claims arising from the October 2021 Data Breach that impacted approximately 12,453 of its current and former employees (the "Data Breach"). *See* Settlement Agreement attached as **Exhibit 2**; *see also* Coates Affidavit, at ¶ 6. The Data Breach included current and former employees' names, addresses, dates of birth and Social Security numbers. ECF No. 25, Amended Class Action Complaint, at ¶1. The Settlement provides significant relief to Settlement Class Members and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). The Court should, therefore, preliminarily approve the Settlement, direct that notice be sent to all Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiff's Motion for Final Approval and petition for the class representative service award, attorneys' fees, and expenses, and set a date for the Final Approval Hearing.

---

[1] Defendant's non-opposition does not constitute an admission as to the validity of any of Plaintiff's factual allegations, causes of action, and claims for relief.  Defendant denies Plaintiff's factual allegations contending, directly or indirectly, that Defendant engaged in wrongful conduct, denies the causes of action, and denies Plaintiff and putative class are entitled to the relief raised in the pleadings, except for as stated in the Settlement Agreement.

## I. Background

### A. History of Litigation

On April 14, 2022, Plaintiff Phelps filed a class action complaint against Defendant in the 28th Judicial Circuit of Kentucky, Pulaski Circuit Court, alleging that Defendant was liable for the Data Breach, as a result of its failure to implement and maintain reasonable data security measures. On May 13, 2022, Defendant filed a notice of removal, removing this case to the United States District for the Eastern District of Kentucky under the Class Action Fairness Act, 28 U.S.C. § 1332(d). ECF No. 1. On August 26, 2022, Defendant filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. ECF No. 22. Following the motion to dismiss, Plaintiff amended his complaint. ECF No. 25. The First Amended Complaint asserts claims against Defendant on behalf of Plaintiff and the putative nationwide class for (1) negligence, (2) invasion of privacy, (3) unjust enrichment, and (4) breach of implied contract. On October 10, 2022, the parties filed a joint notice of settlement and motion to stay this action. ECF. Nos. 28, 29. On October 12, 2022, the Court dismissed this action without prejudice, but allowed the parties to file a motion to redocket this action by November 28, 2022. ECF No. 30.

### B. Negotiations and Settlement

The settlement is the result of months of arms'-length negotiation and hard bargaining. Both parties exchanged informal discovery, including, but not limited to, the allegations in the Amended Complaint, the class size, the types of data impacted in the Data Breach, the amount of insurance coverage Toyotetsu has available for the Data Breach, and information supporting Plaintiff's damages allegations. Coates Affidavit, ¶ 7. Through the informal discovery process, Plaintiff was able to properly evaluate damages on a class-wide basis. *Id*. ¶ 8. After the exchange of a series of offers and demands, the Parties were able to resolve the matter for a non-reversionary

common fund of $400,000, plus Defendant's commitment to implement and/or to keep in place, for a period of two years, certain cybersecurity business practices to further limit the potential for future data security incidents. *Id*. at ¶ 10.  This settlement would resolve all claims related to the Data Breach on behalf of the Class. *See generally* Settlement Agreement. The Settlement Agreement further provides that Defendant must produce additional confirmatory discovery within 30 days of its execution. *See* Settlement Agreement, ¶ 53.

###    C. Summary

Under the proposed Settlement, Defendant will pay $400,000 to establish the Settlement Fund to be distributed to Class Members under the Settlement Agreement. Furthermore, under the Settlement Agreement, Defendant agreed to implement and maintain certain cybersecurity enhancements to Defendant's network. The Settlement defines the Class as follows:

**All persons who were sent notice of the Data Breach.[2]**

Settlement Agreement, ¶ 47. It is estimated that the Class is comprised of approximately 12,453 individuals nationwide. FAC, ECF No. 25, ¶ 3. Under the Proposed Settlement, Defendant agrees to pay a total of $400,000 into the Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Settlement Administration, attorneys' fees and expenses, and a Service Award to Plaintiff. *See* Settlement Agreement, ¶¶ 46, 52.

###    1. Compensation

The Settlement Fund will be used to pay $250 to each Class Member submitting a valid claim under the Settlement. This $250 cash payment will be increased pro rata or decreased pro rata after the payment of any documented monetary losses as identified below, and for attorneys'

---

[2] "Data Breach" shall mean the October 2021 cybersecurity incident against Toyotetsu giving rise to the action.

fees and expenses, the proposed $5,000 Class Representative Service Award, and the costs of Settlement Administration.

The Settlement Fund will provide the reimbursement of up to $5,000 per claimant for documented monetary losses that are fairly traceable to the Data Breach. Settlement Agreement*, ¶* 52(c). Such monetary losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breach through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*.

The Settlement Fund will also be used to pay for any attorneys' fees, expenses, a Service Award to Plaintiff, and the cost of Settlement Administration, as approved by the Court. *Id*. at ¶ 52(b).

### 2. Remedial Measures and Security Enhancements

Separate from and in addition to the Settlement Fund, Defendant agrees to adopt and implement certain data security measures for a period of two (2) years following the effective date of the Settlement Agreement. The cybersecurity enhancements will be filed separately under seal so that Defendant's future cybersecurity is not unduly compromised. *Id*. at ¶ 56. Costs associated with these data security measures shall be paid by Defendant separate and apart from the Settlement Amount. *Id*. at ¶ 57.

### 3. Scope of the Release

In exchange for consideration above, Plaintiff and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from

claims arising from or related to the Data Breach at issue in this litigation. *Id*. at ¶ 17, 68(b). The Settlement's finality is not dependent on the Court awarding attorney's fees and expenses to Class Counsel. *Id*. at ¶ 81. The scope of the release is defined as follows:

> On the Effective Date, all Releasors, including but not limited to Settlement Class Members and Plaintiff, shall be deemed to have and do fully and finally release, acquit, and forever discharge Toyotetsu and any of its past or present parents, subsidiaries, related or affiliated entities, assigns, directors, officers, employees, shareholders, members, partners, principals, owners, divisions, partnerships, attorneys, insurers, and reinsurers, and each of those individuals' or entities' respective predecessors, successors, directors, officers, employees, principals, assigns, and transferees (collectively "Released Parties") from any past, present or future claims, demands, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, charges, complaints, suits, petitions, penalties, damages, or liabilities of any nature, whether known or unknown, liquidated or unliquidated, matured or unmatured, in law, equity, or any other form whereby legal or equitable relief could be sought, that has been asserted or pled, could have been asserted or pled, or was asserted or pled by any Settlement Class Member, including Plaintiff, arising out of or in any way related to the Data Breach and/or Released Parties' recordkeeping or data security policies and practices ("Released Claims").

*Id*. at ¶ 58.

### 4.  The Notice and Administration Plans

Under the Settlement Agreement, Class Counsel, with Defendant's approval, has selected Atticus Administration ("Atticus") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. Defendant, with the assistance of the Settlement Administrator, shall create a "Class List" of all names, emails, and/or mailing addresses of potential Settlement Class Members, to the extent such information was contained in the original list used to send to Class Members notice about the Data Breach. *Id*. at ¶ 65. Defendant will cooperate with Plaintiff concerning reasonable requests for information specific to the identification of Class Members and to the extent such information is readily available from a cost, resource, and access perspective. *Id*. at ¶ 65(b). Class Counsel received quotes from three separate settlement administrators before selecting Atticus as the best settlement administrator for this case. Coates

Affidavit, ¶ 13. Class Counsel's decision to select Atticus was based on the scope of settlement administration Atticus proposed balanced against the cost for such services. *Id*. Class Counsel understand that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select the settlement administrator for this case offering the best service for the best price. *Id*.

Atticus will first provide a written notice that will be mailed to each Class Member for whom valid mailing addresses are known and/or an email notice to Class Members for whom valid email addresses are known. Settlement Agreement, ¶ 66(c), 67(a). The Short Form Notice in the form of a postcard notice with a tear off claim form clearly and concisely informs Class Members of the amount of the Settlement Fund, that they may do nothing and be bound by the Settlement, object to the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Settlement. *Id*. at ¶ 66(b). Atticus will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the Settlement, including copies of the notice, the Settlement Agreement, and all court documents related to the Settlement. *Id*. at ¶ 65(d). Atticus will also be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Escrow Account directly to Class Members. *Id*. at ¶ 53. Class Counsel was able to work with Atticus to get Atticus to agree to cap its quote for Settlement Administration at $35,000 for this case. Coates Affidavit, at ¶ 15.

### 5. Attorneys' Fees, Costs, Expenses, and Service Award

Plaintiff will also separately seek an award of attorneys' fees not to exceed 1/3 of the Settlement Fund (*i.e*., $133,333.33), and for reimbursement of Class Counsel's reasonable costs

and litigation expenses not to exceed $15,000, which shall be paid from the Settlement Fund. *Id*. at ¶¶ 79, 80. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. *Id*. at ¶ 79. The Settlement Agreement further provides for a payment of $5,000 to Plaintiff as a Service Award for his services in representing the Class. *Id*. at ¶ 82.

## II.    LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Federal Rule of Civil Procedure ("Rule") 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same). Plaintiff Phelps requests that the Court preliminarily approve the proposed settlement, the first step in the three-step process.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re*

*Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[3] In essence, the Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[4]

## III.    ARGUMENT

### A.  The Proposed Settlement Satisfies the Standard for Preliminary Approval.

#### 1.  The proposed Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").[5]

---

[3] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[4] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *In re Southern Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).

[5] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months. Coates Affidavit, ¶¶ 7-8. There is no evidence that any collusion or illegality existed during the settlement process. *Id.* at ¶ 8. The Parties' counsel support the Settlement as fair and reasonable, and all certify that it was reached at arms'-length. *Id.*

2. **The proposed Settlement falls within the range of reasonableness and warrants issuance of notice and a hearing on final approval of settlement.**

Although Plaintiff believes that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").[6]

---

[6] Courts within this District have experienced the protracted litigation often required to simply get past the pleading stage in similar actions. *See, e.g., Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting in part and denying in part motion to dismiss complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing all additional claims brought by the plaintiffs in amended complaint); *Savidge v. Pharm-Save, Inc.*,

Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits. Moreover, Class Members have the ability to claim documented losses up to $5,000.

### 3.   *The Proposed Settlement Has No Obvious Deficiencies*

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of the Plaintiff or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiff, like all other Class Members, will receive his settlement benefit in accordance with a claims process that will be presented to the Court for approval.

The matter of attorneys' fees and payment of expenses, as well as any Service Award for Plaintiff, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to one-third of the Common Fund ($133,333.33), which is well within the range of fees awarded within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig*., 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"); *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (noting that a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit."); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio) (awarding attorneys' fees of 1/3 of the $4.25 million common fund); *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) (awarding attorneys' fees of 1/3 of the $3.65 million common fund); *Fields v. KTH Parts Industries, Inc.*, No. 3:19-cv-8, 2022 WL 3223379, at * 7-8 (S.D. Ohio Aug. 9, 2022) (finding that

---

No. 3:17-CV-00186-CHB, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over defendant's objection).

attorneys' fees that are 1/3 of the class action settlement fund are "normal"); *Davis v. Omnicare, Inc.*, No. 5-18-CV-142-REW, 2021 WL 1214501, at *11 (E.D. Ky. Mar. 30, 2021) (preliminarily approving attorneys' fees of 1/3 of the class action settlement fund); *see also* Coates Affidavit, at ¶ 21. Importantly, here, Class Counsel's fees were not negotiated until after Class Counsel agreed upon Class Members' relief. Settlement Agreement, at ¶ 79. Plaintiff further seeks a modest Service Award of Five Thousand Dollars ($5,000.00) for his active involvement in this litigation. Because Plaintiff and Class Counsel will move for an award of costs, fees, expenses, and the Plaintiff service award at least 14 days before the objection and opt out deadlines, the Court will have the ability to consider these payments before granting final approval. Currently, Class Counsel have expended more than 100 hours pursing this matter on behalf of Plaintiff and the Class totaling more than $60,000.00 and have incurred approximately $609.73 in litigation. Coates Affidavit, at ¶ 22.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

**B. Certification of the Settlement Class is Appropriate.**

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Here, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting

only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met for purposes of settlement in this case.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement" (internal quotation marks omitted)); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying 23-person class and stating "there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do."). Here, the 12,453 Class Members satisfies this element.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (Internal quotation marks and citation omitted).

Here, Plaintiff's claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented

Here, the claims all involve Defendant's conduct toward the Settlement Class members, and Plaintiff's and the Class's claims are based on the same legal theories. Thus, Plaintiff's claims are typical of those of the claims of the Settlement Class, and he is an appropriate Settlement Class Representative.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through

qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

Plaintiff Phelps has no conflicts with the Settlement Class and has participated actively in the case. Coates Affidavit, ¶ 9. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 100 data breach class actions in state and federal courts throughout the country. *Id*. at Exhibit A (Class Counsel's firm biography); *see also Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *4 (S.D. Ohio June 13, 2022) (citing *Bechtel v. Fitness Equipment Servs., LLC*, 339 F.R.D. 462, 480 (S.D. Ohio 2021) ("Class Counsel, the law firm Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one."); *Schellhorn v. Timios, Inc.*, No. 221CV08661VAPJCX, 2022 WL 4596582, at *4 (C.D. Cal. May 10, 2022) (granting preliminary approval of settlement in data breach action and noting that "Terence R. Coates of Markovits, Stock & DeMarco, LLC [has] extensive experience litigating consumer protection class actions ….").

### 5. *Certification under Rule 23(b)(3) is appropriate.*

Plaintiff seeks to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*,

75 F.3d at 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re WhirlpoolCorp. Front-Loading Washer Prods. Liab. Litig.*,722 F.3d 838, 860 (6th Cir. 2013). With respect to superiority, the court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

### a. *Common Questions of Law and Fact Predominate.*

In this case, the common factual and legal questions all cut to the issues "at the heart of the litigation."  Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the

controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b. A Class is the Superior Method of Adjudicating this Case.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545(6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies

are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

Thus, the Court may certify the Class pursuant to Rule 23(b)(3).

### C.  The Court should appoint the proposed Class Representatives, Class Counsel, and Class Action Administrator.

Plaintiff seeks to be appointed as Class Representative for the Settlement Class. As discussed above, Plaintiff has cooperated with counsel, provided informal discovery, and assisted in the preparation of the Complaints. Moreover, Plaintiff is committed to continuing to vigorously prosecute this case, including overseeing the notice program, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because he is an adequate representative, the Court should appoint him as class representative.

Second, for the reasons previously discussed with respect to adequacy of representation, the Court should designate Terence R. Coates, Jonathan T. Deters, and Dylan J. Gould of the law firm Markovits, Stock & DeMarco, LLC and Joseph B. Venters of Venters Law Office as Class Counsel.

Finally, the parties have agreed that Atticus shall act as Class Action Administrator. Atticus and its principals have a long history of successful settlement administrations in class actions. Atticus Declaration, at ¶ 6.  The Court should appoint Atticus as Class Action Administrator here.

### D.  The proposed form and manner of notice to the Class is reasonable and should be approved.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a

proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct.2140, 2150, 40 L. Ed. 2d 732 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6thCir. 2008)).

The Notice Plan set forth in the Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Settlement Notice with the aid of a professional notice provider, Atticus. That Settlement Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from Toyotetsu's records, and through databases tracking nationwide addresses and address changes. In addition, Atticus will administer the Settlement Website containing important and up-to-date information about the settlement. Atticus Declaration, at ¶ 10.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than 1/3 of the common fund, plus reimbursement of litigation costs and expenses up to $15,000. The proposed Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Class Member does not request

exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding the Class Representative's request for a service award; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by mail or email to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) (notice sent to individuals' last known address and notice published in the Wall Street Journal constituted adequate notice, even though some members of the class did not receive actual notice). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E.  The Court Should Provide a Schedule Leading Up to the Fairness Hearing

Named Plaintiff requests that the Court set a schedule, leading up to a Fairness Hearing, that would include, *inter alia*, deadlines for notice to Class Members, for Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. At the Fairness Hearing, the Court may hear all evidence and argument necessary to make its final

evaluation of the Settlement. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the Settlement may offer argument in support of final approval. In addition, Class Members who have properly objected to the Settlement may be heard at this hearing. The Court will determine through the Fairness Hearing whether the Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

## CONCLUSION

For these reasons, Class Settlement Counsel respectfully ask the Court to enter an Order: (1) certifying the Class for purposes of settlement; (2) appointing Plaintiff as representative of the Class; (3) appointing the undersigned counsel as Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Class; (6) directing that the notice to the Class be disseminated by the Settlement Administrator, in the manner described in the Settlement; (7) establishing a deadline for Class members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 1**.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (*pro hac vice*)
Jonathan T. Deters (*pro hac vice*)
Dylan J. Gould (*pro hac vice*)
**MARKOVITS, STOCK & DEMARCO LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
513-651-3700
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

Joseph B. Venters
VENTERS LAW OFFICE
P.O. Box 1749
Somerset, KY 42502
606-451-0332
606-451-0335
*joey@venterslaw.com*

*Attorneys for Plaintiff and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I served a copy of the foregoing via electronic filing in the ECF system.

*/s/ Terence R. Coates*
Terence R. Coates