## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

| | | |
|---|---|---|
| **JONATHAN PHELPS, individually and on behalf of all others similarly situated,** | : | **Case No: 6:22-cv-00106** |
| | : | |
| | : | **Judge Claria Horn Boom** |
| **Plaintiff,** | : | **Magistrate Judge Hanly A. Ingram** |
| | : | |
| **v.** | : | **PLAINTIFF'S UNOPPOSED** |
| | : | **MOTION FOR FINAL APPROVAL** |
| **TOYOTETSU NORTH AMERICA,** | : | **OF CLASS ACTION SETTLEMENT** |
| | : | |
| **Defendant.** | : | **(Filed Electronically)** |
| | : | |
| | : | |

Plaintiff Jonathan Phelps respectfully moves the Court for final approval of class action settlement under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff's efforts have resulted in a proposed $400,000.00 non-reversionary common fund settlement on behalf of himself and the Settlement Class that was negotiated at arm's-length. As explained in the accompanying memorandum, this proposed settlement is fair, reasonable, adequate, and in the Class's best interest. A Proposed Order granting this Motion is attached as **Exhibit 1**, the Declaration of Dylan J. Gould in Support of Final Approval of Class Action Settlement is attached as **Exhibit 2** ("Gould Declaration"), and the Declaration of Bryn Bridley on Notice Dissemination and Settlement Administration is attached as **Exhibit 3** ("Atticus Declaration"). Defendant does not oppose this Motion.[1]

---

[1] Defendant's non-opposition does not constitute an admission as to the validity of any of Plaintiff's factual allegations, causes of action, and claims for relief.  Defendant denies Plaintiff's factual allegations contending, directly or indirectly, that Defendant engaged in wrongful conduct, denies the causes of action, and denies Plaintiff and putative class are entitled to the relief raised in the pleadings, except for as stated in the Settlement Agreement.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Defendant Toyotetsu North America ("Defendant" or "Toyotetsu") experienced a data breach in October 2021 that allegedly compromised the sensitive personal information of Plaintiff and roughly 12,000 other individuals. On April 25, 2023, this Court granted preliminary approval of a proposed $400,000 non-reversionary settlement to resolve the claims of Plaintiff and the roughly 12,000 person Class.[2] In doing so, the Court found that the Settlement Agreement was fair, reasonable and adequate, and that the proposed notice plan met the requirements of Fed. R. Civ. P. 23 and due process.

Nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. As of October 10, 2023, of the 11,915 Class Members who were sent direct notice of the proposed settlement, *none* have filed an objection or requested to be excluded from the Settlement. Atticus Declaration, ¶ 5. Approximately 1,017 claims were submitted in this case, comprising a claims rate of 8.5%. *Id*. ¶¶ 5, 12. Furthermore, this case boasts a roughly 7% valid claims rate (791 valid claims out of 11,916 Class Members) which is a very high claims rate for a data breach class action settlement, and indicates that the Class strongly favors the Settlement. *Id*. ¶¶ 12, 16; Gould Declaration, ¶¶ 12, 14. Despite the high claims rate, all Settlement Class Members who submitted a Valid Claim will receive cash payments that exceed the $250 payments that Class Counsel predicted in the Motion for Preliminary Approval. Gould Declaration, ¶¶ 12-13.

---

[2] The detailed procedural background, along with facts and argument supporting certification and settlement, may be found in the preliminary approval filings of this docket. *See* R. 37.

2

Because the Settlement is an excellent result for the Class, particularly in view of the risks involved in continued litigation, Plaintiff respectfully requests that the Court grant final approval of the Settlement, grant Plaintiff's pending Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (R. 40), and enter a final order and judgment dismissing this case.

## I.    BACKGROUND

### A.  History of Litigation

On April 14, 2022, Plaintiff Phelps filed a class action complaint against Defendant in the 28th Judicial Circuit of Kentucky, Pulaski Circuit Court, alleging that Defendant was liable for a data breach that exposed Plaintiff's and Class Members Private Information, including their names, addresses, dates of birth, and Social Security numbers. Shortly after, Defendant filed a notice of removal, removing this case to the United States District for the Eastern District of Kentucky under the Class Action Fairness Act, 28 U.S.C. § 1332(d). R. 1.

On August 26, 2022, Defendant filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. R. 22. Following the motion to dismiss, Plaintiff amended his complaint. R. 25. The First Amended Complaint asserts claims against Defendant on behalf of Plaintiff and the putative nationwide class for (1) negligence, (2) invasion of privacy, (3) unjust enrichment, and (4) breach of implied contract. On October 10, 2022, the parties filed a joint notice of settlement and motion to stay this action. R. 28-29. On October 12, 2022, the Court dismissed this action without prejudice, but allowed the parties to file a motion to redocket this action by November 28, 2022. R. 30. Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement on January 20, 2023. R. 37.[3]

---

[3] The Settlement Agreement was attached to this Motion as R. 37-2.

On April 25, 2023, the Court granted conditional certification of a settlement class defined as "[a]ll persons who were sent notice of the Data Breach." *See* R. 39 at 19; Settlement Agreement, ¶ 47. The Court further granted preliminary approval of the class action settlement and proposed notice plan. *See* R. 39. Thereafter, Plaintiff (through the Settlement Administrator) conducted a successful notice and claims process, and on July 10, 2023, Plaintiff filed his Unopposed Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Fee Motion"). *See* R. 40-1. The Fee Motion, which is currently pending, also included the Declaration of Jonathan Phelps in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award and Final Approval of Class Action Settlement ("Phelps Declaration"), R. 40-3. The Court has scheduled a final fairness hearing for October 24, 2023.

### B.    Notice, Objections, Opt-Outs, and Claims

The Court-approved notice program implemented by the settlement administrator, Atticus Administration, LLC ("Atticus" or "Settlement Administrator"), was effective and complied with due process. Ultimately, the Settlement Class consisted of 11,916 Settlement Class Members. Atticus Declaration, ¶ 5. On May 25, 2023, Atticus caused notice of the Settlement in the form of a "complex" or four-panel postcard ("Short Form Notice") to be sent by U.S. first class mail to 11,915 Settlement Class Members. *Id.* ¶ 5. The Settlement Administrator ran address traces on mail that was returned undeliverable, causing 1,608 notices to be remailed to updated addresses. *Id.* ¶ 7. In total, the Settlement Administrator was able to successfully deliver notice by mail to 89.26% percent of Class Members. *Id.* ¶ 7.

The Settlement Administrator also established a website (the "Settlement Website") where Class Members could review relevant information about the settlement, download relevant case documents, and submit a claim. *Id.* ¶ 8. The Settlement Website has received 4,527 unique visits.

*Id*. The Settlement Administrator also established a toll-free telephone hotline that fielded several calls from Class Members about the Settlement. *Id.* To date, no Settlement Class Members have filed an objection or requested to be excluded from the Settlement. *Id.* ¶ 10. There are 791 valid claims for *pro rata* monetary benefits under the Settlement Agreement. *Id.* ¶ 16.

### C. Class Member Compensation

If approved, 791 Class Members ("Valid Claimants") will receive an equal share of the money left in the $400,000 Settlement Fund after the payment of attorneys' fees, litigation expenses, settlement administration expenses, and any Class Representative Service Award. If the Court approves Plaintiff's request for attorneys' fees of $133,333.33, litigation expenses of $1,234.73, a class representative service award of $5,000, and Settlement Administration expenses of $35,000, a remainder of $225,431.94 will be left to split amongst the 791 Valid Claimants. *See* R. 40; Gould Declaration, ¶¶ 12-13. In other words, each Valid Claimant will receive an immediate cash payment of $285.00, which is remarkably close to the $250 payments that Plaintiff predicted in his Motion for Preliminary Approval. *See id.*; *see also* R. 37, 39.

### D. Remedial Measures and Security Enhancements

Separate from the Settlement Fund, Defendant has adopted and implemented certain data security measures for a period of two (2) years following the executed date of the Settlement Agreement, with Defendant paying the costs of adoption and implementation separate and apart from the Settlement Amount. S.A., ¶¶ 56-57.

### E. Scope of the Release

Class Members who did not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Breach at issue in this litigation. *Id*. at ¶¶ 17, 68(b). The scope of the release is defined as follows:

5

Settlement Class Members and Plaintiff, shall be deemed to have and do fully and finally release, acquit, and forever discharge Toyotetsu and any of its past or present parents, subsidiaries, related or affiliated entities, assigns, directors, officers, employees, shareholders, members, partners, principals, owners, divisions, partnerships, attorneys, insurers, and reinsurers, and each of those individuals' or entities' respective predecessors, successors, directors, officers, employees, principals, assigns, and transferees (collectively "Released Parties") from any past, present or future claims, demands, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, charges, complaints, suits, petitions, penalties, damages, or liabilities of any nature, whether known or unknown, liquidated or unliquidated, matured or unmatured, in law, equity, or any other form whereby legal or equitable relief could be sought, that has been asserted or pled, could have been asserted or pled, or was asserted or pled by any Settlement Class Member, including Plaintiff, arising out of or in any way related to the Data Breach and/or Released Parties' record keeping or data security policies and practices ("Released Claims").

*Id.* at ¶ 58.

## II.    ARGUMENT

### A.  Final Certification of the Settlement Class is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Here, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). As the Court recognized in its Order Preliminarily Approving Class Action Settlement, these requirements are met for purposes of settlement in this case.

### 1. *Numerosity*

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." R. 39 at 5 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976)). This Court previously held that the joinder of Class Members here "would certainly be impracticable." R. 39 at 6. Although the number of Settlement Class Members is approximately 500 less than believed at the time of preliminary approval, 11,916 Class Members still "reaches 'substantial proportions' by any measure." *See id.* (citation omitted). Therefore, the Settlement Class continues to satisfy the numerosity requirement of Rule 23(a)(1). *Id.*

### 2. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). "[T]here need be only one common question to certify a class." *In re Whirlpool Corp.*, 722 F.3d at 853. Here, Plaintiff's claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of

settlement—for all Settlement Class Members at once. The Court should continue to hold that this is sufficient to satisfy the commonality prong for purposes of settlement. *See* R. 39 at 6.

### 3. *Typicality*

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). As this Court previously held, "Plaintiff sets forth the same alleged injury and requests the same remedial theory for all members of the class." R. 39 at 7. Therefore, the Court should continue to hold that the typicality requirement in Rule 23(a)(3) is satisfied for settlement purposes.

### 4. *Adequacy of Representation*

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525). As this Court previously recognized, "Plaintiff undoubtedly shares common interests with the unnamed class members here." R. 39 at 8. Moreover, "Plaintiff has actively participated in the case and

vigorously pursued his own and the Class Members' interests." *Id.* This is further confirmed by the Phelps Declaration, R. 40-3 at ¶¶ 4-6.

Class Counsel have significant experience in class and complex litigation, including more than 100 data breach class actions in state and federal courts throughout the country. Coates Aff., R. 37-6 at Exhibit A (Class Counsel's firm biography); *see also Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *4 (S.D. Ohio June 13, 2022) ("Class Counsel, the law firm Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one."); *Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2023 WL 6443122, at *8 (S.D. Ohio Oct. 3, 2023) ("The Court grants final approval to its appointment of … Markovits, Stock, & DeMarco … as Class Counsel. Class Counsel have extensive experience handling class action cases and have thoroughly represented the Class's interests in this case.").

As this Court previously held, "Class Counsel spent several months investigating the claims at issue, exchanging discovery with Defendant's counsel, and engaging in arms-length settlement discussions." R. 39 at 8. Moreover, "Class Counsel have demonstrated a willingness to commit substantial time and resources to representing Plaintiff's and the Class Members' claims." *Id.* at 8-9. Class Counsel's efforts to further the interests of the Class have continued since the Preliminary Approval Order, as evidenced by the successful notice program, this filing, and Class Counsel's attendance at the upcoming fairness hearing.

### 5.  Certification under Rule 23(b)(3) is appropriate.

"The proposed Settlement Class must also meet one of the three requirements in Rule 23(b). Here, the Parties seek certification of the Class under Rule 23(b)(3), which requires that 'questions of law or fact common to class members predominate over any questions affecting only

individual members,' and that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" R. 39 at 9 (quoting Fed. R. Civ. P. 23(b)(3)). "These are commonly known as the 'predominance' and 'superiority' requirements." R. 39 at 9. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, this Court held that Plaintiff established predominance for settlement purposes because "the Class Members were all victims of the same data breach in October 2021, and the Class Members' claims center on the same theory of liability concerning Defendant's security and breach notification policies." R. 39 at 9-10. This remains true today. Therefore, the Court should hold that Plaintiffs have established predominance sufficient to certify a settlement class.

The Court also held that "superiority is met here because the proposed Settlement 'provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process' and 'includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class.'" R. 39 at 10 (citation omitted). Moreover, "'the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member' and 'the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device.'" *Id.* Superiority continues to exist for the same reasons.

10

**B. The Form and Manner of Notice to the Class was Reasonable and Should be Approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct.2140, 2150, 40 L. Ed. 2d 732 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)). Moreover, settlement notices should "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

The Notice Plan preliminarily approved by the Court and executed by the Settlement Administrator was very successful. The manner of providing notice, which included individual notice by mail to all Class Members who could be reasonably identified, represented the best notice practicable under the circumstances and satisfied the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) (notice sent to individuals' last known address and notice published in the Wall Street Journal constituted adequate notice, even though some members of the class did not receive actual notice).

The Settlement Administrator estimates that it successfully provided direct notice to more than 89% of Class Members. Atticus Decl., ¶ 7. A notice reaching 70-95% of the class is often

cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010) (www.fjc.gov/sites/default/files/2012/NotCheck.pdf); *see also Shy*, 2022 WL 2125574, at *5.

The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). *See* R. 37-2; 37-3; 37-5. The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. *Id*. The notice program satisfies the structures of Rule 23 and due process and should be approved by the Court.

### C.  The Settlement Agreement Merits Final Approval

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Federal Rule of Civil Procedure 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same). Here, only the third step remains.

The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood

12

of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction

of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d

747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to

consider in determining whether a class action settlement is fair, reasonable, and adequate. *See*

Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. Whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather

focus the court and the lawyers on the core concerns of procedure and substance that should guide

the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018

amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness

of a settlement and enjoy "wide discretion in assessing the weight and applicability of these

factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All

of the case law and 23(e) factors weigh in favor of granting final approval here.

## 1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie*

evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15-

CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").[4]

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months. Coates Aff., R. 37-6 at ¶¶ 7-8. There is no evidence that any collusion or illegality existed during the settlement process. *Id*. at ¶ 8. The Parties' counsel support the Settlement as fair and reasonable, and all certify that it was reached at arms'-length. *Id*.; *see also* Gould Declaration, ¶¶ 6-7.

### 2. The complexity, expense, likely duration of the litigation, and substantial risk for Plaintiffs, warrant final approval of the Settlement.

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

---

[4] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)); *see also Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, S.D.N.Y. No. 08 Civ. 6060, 2010 WL 2643307, at *1 (June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).[5] This case is no different in that it is a data privacy class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

---

[5] This Court has experience with the protracted litigation often required to simply get past the pleading stage in a data breach action. *See*, *e.g.*, *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting in part and denying in part motion to dismiss complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing all additional claims brought by the plaintiffs in amended complaint); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-CHB, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over defendant's objection).

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013); *see also Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2023 WL 2755305, at *25 (W.D. Ky. Mar. 31, 2023) ("the Court is concerned that common issues may not predominate over individualized causation and damages inquiries …[,] rendering class certification inappropriate.").

Further, if Plaintiff is successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 WL 5444651, *11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiff would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiff and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval.

While Plaintiff is confident in the strength of his claims, he is also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigations. Defendant has consistently denied the allegations raised by Plaintiff and made clear at the outset that it would vigorously defend the cases. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all.

By contrast, the Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 3. The fact Plaintiff, Class Counsel, and Defendant's counsel recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like Plaintiff, was intimately involved in the litigation and supports the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiff support this Settlement because it provides Class Members with immediate and substantial benefits—notably, each Class Member who submitted a claim will receive a cash payment exceeding $250. Moreover, all Class Members (including those who did not submit a claim) will benefit from the business practice changes implemented by Defendant to further reduce the possibility or likelihood of similar data breaches occurring in the future.

17

As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4. The Class's reaction overwhelming supports the Settlement.

The Class responded very favorably to the Settlement, as evidenced by the fact that there were no objections or requests to be excluded. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("the fact that not one class member objected after receiving the best notice possible under the circumstances to weigh heavily in favor of approving the settlement agreement."); *accord New Eng. Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008). Moreover, nearly 7% of Class Members submitted Valid Claims for monetary benefits, which is particularly high in the data breach context. *See* Gould Declaration, ¶ 12; *see also*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving data breach settlement with a claims rate of roughly 0.23%).

### 5. This Settlement serves the public interest.

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class

action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."). This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate cash benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 6. The other Rule 23(e) factors support the Settlement.

To the extent not addressed above, Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The requested attorneys' fees of one-third of the common fund are well within the range of fees for a case of this nature and will not be paid until the Effective Date. Rule 23(e)(2)(C)(iii); *see also see also In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (noting that a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit.").

There is no undisclosed agreement made in connection with the Settlement. Gould Declaration, ¶ 7; *see also* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity for a *pro rata* payment of money. Rule 23(e)(2)(D).

In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## **CONCLUSION**

For these reasons, Class Settlement Counsel respectfully ask the Court to enter an Order: (1) certifying the Class for purposes of settlement; (2) appointing Plaintiff as representative of the Class; (3) appointing the undersigned counsel as Class Counsel; (4) granting final approval of the proposed Settlement; (5) approving the form and manner of notice to the Class; and (6) directing that the Settlement Administrator disburse benefits to Valid Claimants in the manner described in the Settlement. A proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 1**.

Respectfully submitted,

*/s/ Dylan J. Gould*
Terence R. Coates (*pro hac vice*)
Jonathan T. Deters (*pro hac vice*)
Dylan J. Gould (*pro hac vice*)
**MARKOVITS, STOCK & DEMARCO LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
513-651-3700
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

Joseph B. Venters
**VENTERS LAW OFFICE**
P.O. Box 1749
Somerset, KY 42502
606-451-0332
606-451-0335
*joey@venterslaw.com*

*Attorneys for Plaintiff and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, I served a copy of the foregoing via electronic filing in the ECF system.

*/s/ Dylan J. Gould*
Dylan J. Gould