UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JONATHAN PHELPS, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOYOTETSU NORTH AMERICA, )<br>)<br>Defendants. ) | Civil Action No. 6:22-CV-106-CHB<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff and Class Representative Jonathan Phelps's Unopposed Motion for Attorneys' Fees, Expenses, and Class Representative Service Award [R. 40] and his Unopposed Motion for Final Approval of Class Action Settlement [R. 42]. By Order entered April 25, 2023, [R. 39] ("Preliminary Approval Order"), the Court preliminarily approved the Class Action Settlement Agreement and Release Agreement entered into by Plaintiff and Defendant Toyotetsu North America and dated January 19, 2023, a copy of which is filed of record at [R. 37-2] ("Settlement Agreement"). The Court has since reviewed the instant motions. [R. 40]; [R. 42]. Further, on October 24, 2023, the Court conducted a final fairness hearing ("the Fairness Hearing") to consider the fairness of the Settlement Agreement, hear any objections, and determine whether to grant final approval. *See* [R. 46]. During the hearing, Class Counsel presented oral argument in support of their motions, *see id.* at 1, and no Class Members appeared at the hearing to oppose the Settlement. The Court has considered all the matters

- 1 -

submitted and finds that, for good cause shown and as outlined below, the motions should be **GRANTED**. It is therefore **ORDERED** as follows:

    1.    The Court, for purposes of this Final Judgment, incorporates by reference all legal and factual allegations and conclusions in the Settlement Agreement, and adopts the defined terms as set forth in the Settlement Agreement for any term not otherwise defined herein.

    2.    The Court finds that the Settlement Agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length and without collusion. The Court therefore approves and directs consummation of the Settlement Agreement.

"To approve a proposed settlement, the court must determine whether it is 'fair, reasonable, and adequate.'" *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016)). Federal Rule of Civil Procedure 23(e) "provides the court with factors to consider when making this determination." *Id.* A settlement is "fair, reasonable, and adequate" under Rule 23 if:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

   Fed. R. Civ. P. 23(e)(2). In addition to the Rule 23(e) factors, "[t]he Sixth Circuit factors are also used to evaluate the reasonableness of settlements under the FLSA." *Lott*, 2023 WL 2562407, at *1 (citing *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019)) (add'l citations omitted). Those factors include:(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) (citation omitted). In this case, the Court finds that the Rule 23(e) factors and the Sixth Circuit factors overwhelmingly indicate that the settlement is fair, reasonable, and adequate.

As Plaintiff's unopposed motion for final approval states, and Class Counsel reiterated during the Fairness Hearing, the parties reached their Settlement Agreement after good faith, arm's length negotiations and after engaging in some discovery. *See* [R. 42, pp. 13, 18]. The parties attest that no "collusion or illegality existed during the settlement process," *id.* at 14, and there is no evidence to the contrary. Along the same lines, and among the Rule 23(e) factors, this Court previously acknowledged that Class Counsel and the Class Representative performed substantial work on behalf of the class and demonstrated a commitment to pursuing the class's claims, *see* [R. 39, pp. 7–9], and the Court now concludes that they have adequately represented the class in this case.

The parties also acknowledge that "Settlement is an excellent result for the Class, particularly in view of the risks involved in continued litigation," and the complexity of data breach cases and class actions generally. *Id.* at 3, 15, 16. Considering those risks and the costs associated with further litigation, the Court agrees with the parties that the Settlement adequately compensates the Class Members. Under the Settlement Agreement, Class Members could be

- 3 -

compensated "between $250 and $5,000" based on their provable, out-of-pocket losses stemming from the data breach and depending on how many Class Members opt into the settlement is adequate. [R. 39, p. 18]. During the Fairness Hearing, Class Counsel confirmed that, based on the number of members who submitted valid claims (791 in total), each member who did not submit documentation of out-of-pocket losses from the data breach will receive $285 upon final approval and the Settlement's consummation. *See also* [R. 42, p. 5]. This amount, of course, eclipses the original, minimum amount the parties predicted Class Members would receive. *See* [R. 39, p. 18]. By all accounts, the Court agrees that this amount is adequate.

Concerning "the opinions" of Class counsel and Class Representative Jonathan Phelps, *see Pelzer*, 655 F. App'x at 359, they recognize this is an "outstanding benefit" for Class Members. [R. 37, p. 11]. Moreover, during the Fairness Hearing, Class Counsel reiterated their belief that the settlement is fair, reasonable, and adequate and confirmed that Class Representative Jonathan Phelps agrees. And, as Plaintiff further notes in his motion for final approval, "[t]he Class responded very favorably to the Settlement, as evidenced by the fact that there were no objections or requests to be excluded." [R. 42, p. 18]. Along the same lines, as Class Counsel explained during the Fairness Hearing, all those affected by the data breach had an opportunity to opt into the settlement, and by all accounts, it appears the parties' Settlement treats Class Members fairly relative to each other. Lastly, the Court agrees with the parties that settlement serves the public interest, as "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

For all these reasons, the Court finds the Settlement is fair, reasonable, and adequate to compensate the Class Members in this case.

3. The Court approves the Release provided in Section VII of the Settlement Agreement and orders that, as of the Effective Date, the Released Claims will be released as to the Released Parties. The Court also approves the waiver provided in Section VII at Paragraph 59 of the Settlement Agreement and orders that, as of the Effective Date, the waiver will be effective against Settlement Class Members.

4. The Court has and reserves jurisdiction over the Settlement and the Settlement Agreement, and for purposes of the Settlement and Settlement Agreement, the Court has and reserves jurisdiction over the Parties to the Settlement.

5. The Court finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

6. The Court dismisses with prejudice all claims of the Class against Toyotetsu in this Litigation, without costs and fees except as explicitly provided for in the Settlement Agreement.

7. The Court grants Plaintiff's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiff. [R. 40]. The Court awards Class Counsel $133,333.33 in attorneys' fees and reimbursement of expenses of $1,234.73, and it awards Plaintiff and Class Representative Jonathan Phelps $5,000 as a Class Representative fee, all of

which should be paid according to the terms of the Settlement Agreement. The Court finds that this amount of fees and reimbursement is fair and reasonable for the reasons explained below.

In the motion for preliminary approval of the Parties' Settlement, Class Counsel advised that they would separately move for attorneys' fees not to exceed one-third of the Settlement Fund, or $133,333.33, and for reimbursement of their reasonable costs and litigation expenses not to exceed $15,000, to be paid from the Settlement Fund. [R. 37, p. 7–8]. At that time, the Court found the proposed fee structure appeared "to be a fair, reasonable, and adequate settlement of the Rule 23 Class," as "Class Members would be compensated on a sliding scale based on their provable losses as a result of the Data Breach, and could receive between $250 and $5,000" even after attorneys' fees and costs were paid. [R. 39, p. 18]. The Court further noted that, "[a]lthough Class Counsel plans to separately move for approval of their attorneys' fees, . . . courts in the Sixth Circuit have found attorneys' fees in the amount of one-third of the common fund reasonable and appropriate." *Id.* at n.1 (counting cases).

Plaintiff has now tendered his Motion for Attorneys' Fees, Expenses, and Class Representative Service Award and requests "an order awarding (1) $133,333.33 for attorney fees (one-third (1/3) of the $400,000 Settlement Fund); (2) $1,234.73 for reimbursement of Class Counsel's reasonable costs and expenses; and (3) a Service Award of $5,000 for the Class Representative." [R. 40-1, p. 1].

The Supreme Court has held that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also* Fed.

R. Civ. P. 23(h)(1) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement," where "Notice . . . [has been] served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.").[1] "This doctrine, known as the 'common-fund doctrine,' derives from a federal court's 'historic equity jurisdiction,' and is premised upon the principle 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277 (S.D. Ohio) (cleaned up) (citing *Boeing*, 444 U.S. at 478; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939)).

Here, pursuant to the Parties' Settlement Agreement, Defendant will create a $400,000 common fund for the benefit of the Class. In the Sixth Circuit, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund')." *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *3 n.4 (W.D. Ky. Mar. 17, 2023) (internal citation and quotation marks omitted); *Robles v. Comtrak Logistics, Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) (noting "[t]he percentage-of-the-fund method . . . tends to be favored over the lodestar approach by courts in this circuit").

---

[1] The Court notes that Class Counsel complied with Rule 23's notice requirement with respect to its fee and expense request. *See* [R. 37-5 (Long Form Notice), p. 6] ("Class Counsel have undertaken this case on a contingency-fee basis, meaning they have paid for all of the expenses in the case and have not been paid any money in relation to their work on this case. Accordingly, Class Counsel will ask the Court to award them attorneys' fees of up to 1/3 ($133,333.33) of the Settlement Fund and reimbursement for costs and expenses not to exceed $15,000 to be paid from the Settlement Fund.").

The Sixth Circuit has provided the following factors for district courts to consider when determining what constitutes reasonable attorneys' fees in common fund cases:

> (1) the value of the benefit rendered to the plaintiff class []; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 5087766, at *6 (E.D. Ky. Aug. 26, 2020) (citing *Bowling*, 102 F.3d at 780).

In this case, the Court finds that each factor supports Class Counsel's requested fees.[2] With respect to the first factor, the Court notes that it has already found the benefit achieved by Class Counsel on behalf of the class was "outstanding." [R. 39, p. 18]. As Class Counsel confirmed during the Fairness Hearing, each class member who provided a valid claim will receive a check for $285. Moreover, because Defendant has denied liability and maintains that Plaintiff's allegations lack merit, Plaintiff acknowledges that the certainty and finality of a settlement is itself a benefit. Plaintiff notes, "[g]iven the risk of proceeding, the value obtained from bringing, prosecuting, persevering, and settling this litigation should not be underestimated." [R. 40-1, p. 8]. Further, Plaintiff believes that "[a]ny delay in the process could

---

[2] The Court also observes that Class Counsel's requested fees equal one-third of the common fund created, a percentage deemed reasonable by other courts in this Circuit. *See, e.g.*, *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *15 (E.D. Ky. May 12, 2020) ("[O]ne-third of the common fund is a reasonable fee in this case."); *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-CV-00411, 2023 WL 3204684, at *8 (S.D. Ohio May 2, 2023) ("When using the percentage-of-the-fund method, courts in the Sixth Circuit generally approve of awards that are one-third (1/3) of the total settlement."); *Zilinsky v. LeafFilter N., LLC*, No. 2:20-CV-6229, 2023 WL 2696554, at *6 (S.D. Ohio Mar. 29, 2023) (awarding attorneys' fees of "one-third of the total Settlement Fund"); *Love v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 4352800, at *5, *7 (W.D. Ky. Sept. 24, 2021) (approving 33.85% of fund as reasonable attorneys' fees).

be of great detriment to the Class." *Id.* at 9 (quoting *Davis v. Omnicare, Inc.*, 5:18-CV-142-REW, 2021 WL 1214501, at *9 (E.D. Ky. Mar. 30, 2021) ("All of this signifies risk and indeterminacy, things that obviously affect the reasonableness of a brokered result. The class and collective members faced a daunting gauntlet of hurdles, and that contributes to the reasonableness of an arms' length, risk reflective settlement."); *Connectivity Sys.*, 2011 WL 292008, at *4 ("Given the time value of money, a future recovery, even one greater than the proposed Settlement Amount, may be less valuable to the Settlement Class than receiving the benefits of the Settlement Agreement now.")). The Court agrees that the results achieved in this case are substantial, timely, and support Class Counsel's fee request.

On the second factor, the value of counsel's services on an hourly basis confirms that the requested fee award is "roughly aligned with the amount of work the attorneys contributed." *In re Cardinal Health*, 528 F. Supp. 2d at 764. This consideration is often referred to as a "lodestar cross-check" and seeks to ensure counsel does not receive a windfall. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. App'x 496, 500 (6th Cir. 2011). "The Court performs a lodestar cross-check by comparing the lodestar multiplier used in this case to lodestar multipliers used in similar cases." *In re Cardinal Health*, 528 F. Supp. 2d at 767. "In contrast to employing the lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)).

Class Counsel has submitted that from May 2022 through July 7, 2023, they spent "more than 130 hours prosecuting this litigation for a lodestar total of approximately $85,000.00." [R.

- 9 -

40-1, p. 12]. At the time they sought preliminary approval, their requested fee of $133,333.33, when cross-checked, equaled a multiplier to the lodestar of roughly 1.5. And, indeed, courts within the Sixth Circuit have noted that "a multiplier of approximately 1.5" is "well within an acceptable range." *Midland, Funding, LLC v. Brent*, No. 3:08-cv-1434, 2011 WL 3557020, at *19 (N.D. Ohio Aug. 12, 2011); *Barnes v. City of Cincinnati*, 401 F.3d 729, 746–47 (6th Cir. 2005) (approving 1.75 multiplier). Even so, at that time, Class Counsel also noted that they would "necessarily spend substantial additional time from this point to conclusion of the case including drafting the motion for final approval, attending the final approval hearing, working with the Settlement Administrator to administer the Settlement - time that will not be reflected in this fee application." *Id.* And, indeed, during the Fairness Hearing, Class Counsel explained that the additional time they have spent on the case since the Court preliminarily approved the Settlement has created a "negative multiplier," meaning the $133,333.33 fee would, when broken down based on the total number of hours worked, represent less than their normal, hourly rate. Thus, the Court finds that the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

Relatedly, on the third factor, Class Counsel's services in this matter were undertaken on a contingent basis. *See* [R. 40-1, p. 10]. "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Whitlock v. FSL Mgmt., LLC*, No. 3:10cv-00562, 2015 WL 9413142, at * 9 (W.D. Ky. Dec. 22, 2015) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1043)); *see also In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765 (S.D. Ohio 2007) (noting contingency cases "risk that attorneys will not recover

- 10 -

compensation for the work they put into a case") (citation omitted). Class Counsel submits that they "took risk in advancing all costs (which presently total $1,234.73), while receiving no compensation for the work they have performed over the past two years." [R. 40-1, p. 10]. Moreover, Class Counsel continues, "had there been no recovery, Class Counsel would not have been paid a fee or reimbursement for their expenses." *Id.* The Court agrees, and this factor weighs in favor of Class Counsel's requested fees.

Considering the fourth factor, the Court agrees that awarding Class Counsel's requested fee provides an incentive for other qualified and experienced attorneys to undertake similar cases on a contingent basis, which benefits those without the resources to otherwise employ counsel. *See Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6, 2007) ("[C]lass counsel's expenditure of time and money benefitted small claimants who lack the resources to prosecute a case of this nature."). Plaintiff submits, "[w]ithout counsel willing to take the risk of challenging companies like Toyotetsu," he "would have been left with no recourse since the cost to pursue his individual claims far exceeded his damages." [R. 40-1, p. 9]. Indeed, in cases such as this, a class action is the only opportunity for a plaintiff to see any potential recovery. *See In re Skechers Toning Shoe Products Liab. Litig.*, 3:11-MD-2308-TBR, 2013 WL 2010702, at *9 (W.D. Ky. May 13, 2013) ("Many of the class members in this action would be financially unable to pursue the claims asserted on their own accord. Additionally, the fact that individual plaintiffs may only receive a small recovery also impedes individual efforts."); *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the

individual class members probably could not obtain on their own."); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) ("Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases."). This factor counsels in favor of awarding Class Counsel the fees requested.

On the fifth factor, complexity of the litigation, Class Counsel submits that "this is a particularly complex class action in an especially risky area, that has very little precedent in this federal district." [R. 40-1, p. 12]. The Court agrees. The law surrounding data breach cases is unsettled and fast-changing. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving class settlement and noting "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"); *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (noting the challenges in litigating data breach cases meant that "Plaintiffs would have faced prolonged litigation and significant obstacles as trial approached"); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases and noting "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on[.]"). This factor weighs in favor of awarding the proposed fee.

Lastly, concerning the professional skill and standing of counsel on both sides, the Court recognizes Class Counsel's "substantial experience representing plaintiffs in data breach class actions." [R. 40-1, p. 14]. Class Counsel notes that attorney Coates is "a national leader in data privacy litigation" and "frequently appointed as lead counsel for plaintiffs in data breach and data privacy class action cases across the country and is a frequent speaker at national conferences for the plaintiffs." *Id.* Likewise, Defendant is represented by skilled counsel with experience defending data breach cases from Lewis, Brisbois, Bisgaard & Smith, a well-respected defense firm. The Court finds that this factor, and Class Counsel's professionalism, experience, and skill support the requested fee.

For all these reasons, the Court finds Class Counsel's requested fee of $133,333.33 is fair and reasonable. In addition to their attorneys' fees, Class Counsel also requests reimbursement of the reasonable costs and expenses incurred during this litigation. [R. 40-1, p. 15]. "[U]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *In re Flint Water Cases*, 583 F. Supp. 3d 911, 932 (E.D. Mich. 2022), appeal dismissed, 2022 WL 18960956 (6th Cir. Sept. 14, 2022) (citation omitted). Here, the Parties' Settlement Agreement states that Class Counsel's expenses will be capped at $15,000.00. However, Class Counsel incurred, and now requests, only $1,234.73 in costs and expenses. [R. 40-1, p. 16]. These expenses, delineated in the Declaration of attorney Terrence R. Coates, include $714.73 in filings fees for complaints and

three pro hac admission applications, $316.95 in copying costs, and in $203.05 estimated mileage reimbursement for the upcoming travel to the Fairness Hearing, computed at the federal mileage reimbursement rate ($.655 per mile x 310 miles). [R. 40-1, p. 5, ¶ 8]. The Court agrees that these expenses are reasonable, necessary, and directly related to Class Counsel's work in this litigation. The Court will therefore approve Class Counsel's request for fees in the amount of $1,234.73.

Lastly, Plaintiff seeks a Service Award for his work as Class Representative in this action. [R. 40-1, p. 16]. The parties' Settlement Agreement contemplated that Class Counsel would seek such an award in the amount of $5,000.00. *See* [R. 37-2 (Settlement Agreement), ¶ 82]. Plaintiff submits that this award should be granted "under principles of equity" and notes "the amount is consistent with awards granted by courts within this District." [R. 40-1, p. 16]. With respect to the work and effort Plaintiff put into this case as Class Representative, Class Counsel notes, "Plaintiff indicated his desire and willingness to undertake the responsibilities and fiduciary duties on behalf of the class," which "is a voluntary obligation that goes well beyond the pursuit of his individual claims." *Id.* Further, Class Counsel provides that "Plaintiff remained in close contact with Class Counsel, prior to the case filing and throughout the litigation; he also reviewed the Complaint and other court filings, and approved the Settlement." *Id.*; *see also* [R. 40-3 (Declaration of Jonathan Phelps) ¶¶ 5–6]. Class Counsel submits that "the recovery in this case would not have occurred" if not for Plaintiff's efforts on behalf of the Class Members. *Id.* For these reasons, the Court finds that a Service Award of $5,000.00 is fair and reasonable to compensate Plaintiff, who fully and adequately represented the Class, for his time and work

alongside Class Counsel on this case. The Court will therefore award Class Representative Jonathan Phelps $5,000 to be paid according to the terms of the Settlement Agreement.

8. The Court's Preliminary Approval Order approved the Short Form Settlement Notice, Long Form Notice, Claim Form, and found the mailing, distribution, and publishing of the various notices as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to it.

9. The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that the Notice to Class Members complied with Fed. R. Civ. P. 23 and due process. The Settlement Class consisted of 11,916 Settlement Class Members. [R. 42, p. 4]; *see also* [R. 42-3 (Declaration of Bryn Bridley, Atticus Administration, LLC), ¶ 5]. On May 25, 2023, the previously approved Settlement Administrator, Atticus Administration, LLC, sent notice of the Settlement by U.S. first class mail to 11,915 Settlement Class Members. [R. 42-3 (Declaration of Bryn Bridley, Atticus Administration), ¶ 5]. The Settlement Administrator ran address traces on mail that was returned undeliverable, which resulted in 1,608 notices being remailed to updated addresses. *Id.* at ¶ 7. In total, the Settlement Administrator was able to successfully deliver notice by mail to 89.26% percent of Class Members. *Id.* The Settlement Administrator also established a Settlement Website where Class Members could review relevant information about the settlement, download case documents, and submit a claim. *Id.* at ¶ 8. The Settlement Website has received 4,527 unique visits. *Id.* The Settlement Administrator also established a toll-free telephone hotline that fielded several

calls from Class Members about the Settlement. *Id.* To date, no Settlement Class Members have filed an objection or requested to be excluded from the Settlement. *Id.* at ¶ 10. There are 791 valid claims for pro rata monetary benefits under the Settlement Agreement. *Id.* at ¶ 16. As the unopposed motion for final settlement represents, and Class Counsel confirmed at the Fairness Hearing, "this case boasts a roughly 7% valid claims rate (791 valid claims out of 11,916 Class Members) which is a very high claims rate for a data breach class action settlement, and indicates that the Class strongly favors the Settlement." [R. 42, p. 2]; *see also* [R. 42-2 (Declaration of Dylan Gould), ¶¶ 12, 14]. And, once again, the Court notes that no Class Members appeared at the hearing to object to the Settlement and no members opted out of the settlement.

10. The Court finds Toyotetsu has complied with the requirements of 28 U.S.C. § 1715 regarding the CAFA Notice.

11. The Court grants final approval of its appointment of Jonathan Phelps as Class Representative as provided in the Preliminary Approval Order [R. 39]. The Court finds that for settlement purposes the Class Representative is similarly situated to absent Class Members, is typical of the Class and is an adequate Class Representative, and that Class Counsel and the Class Representative have fairly and adequately represented the Class.

12. The Court grants final approval to its appointment of Class Counsel as provided in the Preliminary Approval Order [R. 39], appointing Terence R. Coates, Dylan J. Gould, and Jonathan T. Deters of Markovits, Stock, & DeMarco, LLC, and Joseph Venters of Centers Law Office as Class Counsel.

13.     The Court certifies the following Class for settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3), subject to the Class exclusions set forth in the Settlement Agreement:

> **Class: All person who were sent notice of the Data Breach.** Excluded from the Class is Toyotetsu; any entity in which Toyotetsu has a controlling interest; and the affiliates, attorneys, successors, heirs, and assigns of Toyotetsu. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

14.     The Court finds that the Class defined above satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes in that: (a) the Class is so numerous that joinder of all Class Members would be impracticable; (b) there are issues of law and fact that are common to the Class; (c) Class Representative's claims are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members; (d) the Class Representative and Class Counsel have fairly and adequately protected the interests of the Class, as the Class Representative has no interests antagonistic to or in conflict with the Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Class; (e) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement are superior to other methods available for a fair and efficient resolution of this controversy.

15.     Notably, there no requests for exclusion from the Settlement and no objections to the Settlement. This indicates that the Class has responded favorably to the Settlement.

16.     Having considered the negotiation of, the terms of, and all of the materials submitted concerning the Settlement Agreement; having considered Plaintiff and the Class's likelihood of success both of maintaining this action as a class action and of prevailing on the

claims at trial, including the possibility that Toyotetsu could prevail on one or more of its defenses; having considered the range of the Plaintiff's possible recovery (and that of the Class) and the complexity, expense, and duration of the Litigation; and having considered the substance and amount of opposition to the proposed settlement, it is hereby determined that:

a. Plaintiff and Class Counsel have adequately represented the proposed Class;

b. the terms of the Settlement Agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiff and Toyotetsu;

c. the outcome of the Litigation was in doubt when the Settlement was reached making the compromise under this Settlement reasonable under the circumstances;

d. it is possible the proposed Class could receive more if the Litigation were to go to trial, but it is also possible that the proposed Class could receive less (including the possibility of receiving nothing) and/or that Toyotetsu could defeat class certification;

e. the value of immediate recovery outweighs the possibility of future relief that would likely occur, if at all, only after further protracted litigation and appeals;

f. the Parties have in good faith determined the Settlement Agreement is in their respective best interests, including both Plaintiff and Class Counsel determining that it is in the best interest of the Class Members;

g. the aggregate consideration for the Class—including both the Settlement Fund, which Toyotetsu shall fund, and remedial measures Toyotetsu is or has

        implemented—is commensurate with the claims asserted and being released as part of the Settlement, and,

    h. the terms of the Settlement Agreement treat the Class Members equitably relative to each other and fall within the range of settlement terms that would be considered a fair, reasonable, and adequate resolution of the Litigation.

Therefore, pursuant to Rule 23(e), the terms of the Settlement Agreement are finally approved as fair, reasonable, and adequate as to, and in the best interest of, the Class and each of the Class Members. Class Members who did not opt-out of the Settlement are bound by this Final Approval Order. The Settlement Agreement and its terms shall have res judicata and preclusive effect in all pending and future lawsuits or other proceedings as to Released Claims and waivers applicable thereto.

    17.    The Court approves the distribution and allocation of the Settlement Fund under the Settlement Agreement. To the extent that any funds remain after the allocation of the Settlement Fund pursuant to the terms of the Settlement Agreement, Settlement benefit distributions will be increased or decreased pro-rata, with attorneys' fees and expenses, Settlement Administration fees and expenses, and Class Representative Service Award deducted first. Here, the 791 Class Members submitting valid claims for the pro rata cash payments will each receive approximately $285. To the extent any funds remain in the Settlement Fund resulting from any unredeemed pro rata cash payments, the funds remaining in the Settlement Fund will be distributed via a *cy pres* distribution to the United Way of South Central Kentucky.

18.     This Final Approval Order, and all statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Toyotetsu of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Toyotetsu or of the validity or certifiability for this Litigation or other litigation of any claims or class that have been, or could have been, asserted in the Litigation.

19.     This Final Approval Order, and all statements, documents or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing by Toyotetsu, or that Plaintiff, any Settlement Class Member, or any other person has suffered any damage due to the Incident. Notwithstanding the above, the Settlement Agreement and this Final Approval Order may be filed in any action by Toyotetsu, Class Counsel, or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order.

20.     The Settlement Agreement and Final Approval Order shall not be construed or admissible as an admission by Toyotetsu that Plaintiff's claims or any similar claims are suitable for class treatment.

21.     The Court will separately enter Judgment.

This the 25th day of October, 2023.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY